# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| OHIO NURSES ASSOCIATION, ET AL., | ) ) ) | CASE NO.1:20CV1656 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) ) | |
| ASHTABULA COUNTY MEDICAL CENTER, ET AL., | ) ) ) | OPINION AND ORDER |
| Defendant. | ) ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on the Motion for Temporary and Preliminary Injunctive Relief of Plaintiffs' Ohio Nurses Association, Stephanie Hall and Rebekah Spencer. (ECF # 2).  According to Plaintiffs, Defendant Ashtabula County Medical Center ("ACMC") is closing its Maternity Ward on August 1, 2020, leaving Ashtabula County women without critical OB-GYN care in Ashtabula County.   The loss of the lone county maternity ward presents a health risk to pregnant women and their babies and constitutes unlawful Sex Discrimination in violation of the Affordable Care Act ("ACA").

Plaintiffs' Complaint further alleges a breach of the Collective Bargaining Agreement between the Ohio Nurses Association ("ONA") and ACMC which requires any and all disputes

arising out of the CBA be submitted to binding arbitration.  Plaintiffs have filed a formal

grievance under the CBA (ECF # 1-22) and request that the Court enjoin the closure of the

Maternity Ward to allow the parties to submit their disputes to arbitration.

Lastly, Plaintiffs' Complaint alleges Breach of Fiduciary Duty by each named Trustee

of the ACMC Board of Trustees for the imminent closure of the Maternity Ward in violation of

the ACMC's Articles of Incorporation.

**Plaintiffs' Arguments for Injunctive Relief**

According to the Complaint, ACMC is a non-profit hospital located in Ashtabula,

Ohio, is affiliated with the Cleveland Clinic and is governed by a Board of Trustees ("Board").

ECF # 1, ¶¶ 27-28, 32.

The Amended  and  Restated  Articles  of  Incorporation ("Articles of

Incorporation") read in pertinent part:

> The  purpose  or  purposes  for which  the CORPORATION is formed are:
>
> (a) To maintain and conduct a  hospital organized  and operated
> exclusively  for  charitable,  scientific  and educational purposes and not
> for profit, to provide health care for the residents of Ashtabula County, Ohio,
> and other  communities,  including emergency, outpatient and  inpatient
> programs  of  general  and  special health  care,  community  education
> and  community health  care  planning, all of which  provide patients  with the
> services of qualified physicians, nurses, administrators and  staff, afford
> patients  their  rights  and their dignity from before birth through death, and
> provide preventative health education and care to the community;
>
> (b)  In order to carry out the foregoing, among other things:
>
> > (i) To  provide  hospital  care, clinics, and  dispensaries
> > for  persons  needing medical  and  surgical  care  and attention...

(*Id.*, ¶ 30).

ACMC is the sole hospital in Ashtabula County providing labor and delivery services. (*Id.*, ¶ 31). The Board announced the closing of the Maternity Ward and Skilled Nursing Unit in 2020. (*Id.*, ¶ 39). The closure of the ACMC Maternity Ward leaves Ashtabula County without a maternity care unit. The closest maternity unit resides some fifty miles away, making the drive for many Ashtabula residents over fifty minutes. (*Id.*, ¶ 34). In inclement weather the drive is often two to three times longer, presenting a serious danger to expectant mothers whose only recourse would be to present at the ACMC emergency room, which lacks staff specifically trained in OB-GYN services. (*Id.*, ¶ 35).

According to Plaintiffs, ACMC received over $22,000,000 in federal monies relating to the COVID-19 pandemic since May of 2020. ACMC first informed ONA of the impending closure of the ACMC Maternity Ward on June 25, 2020. The Board's decision to close the ACMC Maternity Ward was not due to lack of funds but was made to benefit Hillcrest Hospital, the nearest maternity ward which is also affiliated with the Cleveland Clinic. Furthermore, ACMC Maternity Ward nurses are represented by ONA. Hillcrest Hospital Maternity Ward nurses are not represented by a collective bargaining unit. (*Id.* ¶¶ 5, 38-39, 58).

ACMC produced a Report in 2013, outlining the greater likelihood of high-risk behaviors of Ashtabula County expectant mothers when compared to expectant women outside the county, resulting in more high-risk pregnancies. The Report also found a higher percentage of teenage pregnancies in Ashtabula County than Ohio as a whole. Under the ACMC plan, expectant mothers will receive obstetric care at ACMC but will need to transport to Hillcrest for delivery or worse and will be required to transport emergently to the ACMC

Emergency Room for delivery.  This plan presents an unacceptable risk to the health of the expectant mother and unborn child.  (*Id.* ¶¶ 40, 42, 44-46).

Plaintiff Stephanie Hall ("Hall") is thirty-two weeks pregnant and is at high risk to deliver early.  (*See* ECF # 1-20).  Plaintiff Rebekah Spencer (Spencer"), a Registered Nurse at ACMC,  is twenty-six weeks pregnant.  (*See* ECF #1-19).  She is an operating room nurse and member of ONA and is concerned the loss of skilled OB-GYN staff will risk the health of expectant mothers and babies and will increase the professional liability of bargaining unit nurses.  (*Id.*).

Plaintiffs' Complaint alleges that closing the ACMC Maternity Ward constitutes Sex Discrimination in violation of Section 1557 of the ACA and the actions of the Board in voting to close the same is a Breach of their Fiduciary Duty under Ohio Revised Code Section 1702 and common law.  (*See generally*, ECF # 1).

Lastly, the Complaint alleges ACMC and ONA are parties to a CBA.  (*Id.* ¶ 57).  Defendants' plan to close the Maternity Ward  violates a number of provisions of the CBA.  (*See generally*, ECF # 1-22).  In particular, the closing of the ACMC Maternity Ward is a "restructuring" that requires bargaining between the parties to the CBA and an impasse before implementation.  (*Id.* ¶ 61).  According to Plaintiffs, no such bargaining or impasse has occurred, in violation of the CBA.  (*Id.*)  Because the CBA requires all disputes be ultimately submitted to binding arbitration, injunctive relief is warranted to allow the parties to engage in the contracted-for grievance process.  (*Id.* ¶ 7).  To allow the closure to proceed in the absence of arbitration would render the arbitration process a nullity, according to Plaintiffs.  (*Id.* ¶ 71).

On July 28, 2020, the Court held a telephone status conference with counsel for

4

Plaintiffs and Defendant ACMC (the docket does not evidence the individually named Trustees have yet been served) to discuss the pending Motion and ordered Defendants to submit an opposition brief the following day.  At the conference, the parties informed the Court they were proceeding with the grievance process as set forth in the CBA.

**<u>Defendants' Opposition Brief</u>**

Defendants assert that ACMC's Maternity Ward delivers on average only one child per day and that 66% of births to Ashtabula residents over the last five years were delivered at facilities outside Ashtabula County.  Furthermore, ACMC is a Level One nursery and lacks capabilities to service high-risk births such that high risk pregnancies are routinely transferred to higher level facilities.  Due to the low number of deliveries, ACMC lost over $2 million per year keeping its Maternity Ward open.

Defendants oppose Plaintiffs' Breach of Fiduciary Duty claim, contending that Plaintiffs cannot show that ACMC owes any fiduciary duty to patients of the hospital.  Instead, relevant statutory law and common law hold that the duty owed by Trustees of a non-profit corporation runs to the corporation itself and outside parties are owed no duty.  Nor have Plaintiffs demonstrated any special interest warranting a finding of a special duty owed them.  Lastly, Ohio law requires a clear and convincing evidentiary showing of bad faith or self-dealing on the part of the Trustees and Plaintiffs have produced no such evidence.

According to Defendants, Plaintiffs are precluded from asserting a disparate impact claim of Sex Discrimination as courts have conclusively held that Title IX does not prohibit disparate impact sex discrimination.  Moreover, Plaintiffs have not asserted and have not produced clear and convincing evidence of  intentional sex discrimination by Defendants.

Moreover, Defendants argue that Plaintiffs' thirty-five day delay in filing for injunctive relief militates in favor of denial of such relief as it supports Defendants' position that Plaintiffs will not suffer irreparable harm.  Plaintiffs knew by June 23, 2020 that ACMC planned to close the Maternity Ward, yet waited until four days prior to the actual closing date to file their Motion.  Defendants further contend that the harms complained of by Plaintiffs are too speculative to warrant the extraordinary remedy of injunctive relief.  Furthermore, ACMC has produced evidence that its current obstetricians will remain on staff and will be available on-call to provide care if any pregnant woman must deliver in the emergency room.  In addition, both individual Plaintiffs have identified their pregnancies as "high risk," which is exactly the type of pregnancy ACMC would likely not handle as a Level 1 nursery.

Defendants also challenge Plaintiffs' standing to assert community-wide harms and stress ACMC will still provide prenatal, postpartum and gynecological services to the Ashtabula community.

Defendants further assert the harm to ACMC is greater than the speculative harms asserted by Plaintiffs because the Maternity Ward loses over $2 million dollars per year. Forcing ACMC to keep the unit open when it runs such a deficit risks ACMC's ability to provide other critical services to the Ashtabula community.

Finally, Defendants argue Plaintiffs are not entitled to injunctive relief in aid of arbitration as their grievances are not "sufficiently sound" because the CBA prohibits the Labor Management Committee from effecting any change of the terms of the CBA regarding the relationship between ACMC and any nurse.  Furthermore, any challenges Plaintiffs may have regarding ACMC's alleged unfair labor practices under the National Labor Relations Act

6

are exclusively reserved for National Labor Relations Board.

Defendants assert that none of the alleged breaches of the CBA have merit nor will they result in an irreparable harm to the Plaintiffs.  Plaintiffs' increased risk in delivery of their babies resulting from the closure of the Maternity Ward does not present an irreparable harm subject to a labor relations injunction and their speculative harm does not present clear and convincing evidence of such harm.

## LAW AND ANALYSIS

**Standard of Review**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly.  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction.  *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods*., 134 F. 3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F. 3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007).  While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985)), " a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence.  *See Deck v.*

*City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc.*, 404 F. 2d 256, 257 (6th Cir. 1968).

The Court may issue a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.  (Fed. R. Civ. P. 65c).

**Sex Discrimination and the ACA**

Plaintiffs' Complaint at paragraph 86 alleges:

The conduct of Defendant ACMC described herein constitutes sex discrimination against Plaintiffs on the basis of sex in violation of Section 1557. Defendants perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiffs' rights. Further, ACMC's facially neutral action of closing its Maternity Unit has a disproportionate effect on women.

Paragraph 88 continues:

ACMC's decision to close its Maternity Unit and divert patients to Hillcrest Hospital has, by definition, the effect of excluding pregnant women employed at the hospital in the ONA bargaining unit as well as on expectant mothers in the community from safe, nearby access to labor and delivery services... Moreover, ACMC does not deny access to healthcare to men regarding male-specific conditions such as treatment for prostate cancer, testicular cancer, erectile dysfunction, male chromosomal diseases, and other such male-specific conditions, regardless of the profitability of such care.

(ECF # 1).

Thus, Plaintiffs allege a disparate impact claim of sex discrimination because the actions of ACMC in closing its Maternity Ward, although facially neutral, will have a disparate discriminatory impact on the safety and health of women employed at ACMC and in the greater Ashtabula County community.

8

Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116, provides that:

> [e]xcept as otherwise provided for in this title (or an amendment made by this title),an individual shall not, on the ground prohibited under ... title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) ... be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under ... title IX ... shall apply for purposes of violations of this subsection.

The Affordable Care Act prohibits discrimination based on several grounds found in separate federal statutes, including Title IX.  However, the Sixth Circuit has recently held that the ACA "does not change the nature of those grounds any more than it adds a new form of discrimination, say discrimination based on political perspective, to the law.  By referring to four statutes, Congress incorporated the legal standards that define discrimination under each one."  *Doe v. BlueCross BlueShield of Tennessee, Inc.,* 926 F.3d 235, 239 (6th Cir. 2019). The ACA refers to and incorporates the prohibitions against sex discrimination in education to health programs and activities.  "Title IX prohibits sex discrimination by recipients of federal education funding.  The statute provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173, 125 S. Ct. 1497, 1503  04, 161 L. Ed. 2d 361 (2005) quoting 20 U.S.C. § 1681(a).

9

A plaintiff suing under Title IX must show that "the defendant discriminated against him or her because of sex; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018).  Title IX prohibits intentional discrimination in education, but courts that have considered the statute, including the Sixth Circuit, have held it does not prohibit disparate impact sex discrimination. "Title VI, for example, doesn't prohibit disparate-impact discrimination. (Internal citation omitted). It's unlikely that Title IX, which was patterned on Title VI, does so either." *Doe,* 926 F.3d at 240 citing *Jackson,*  544 U.S.  at 173, ("Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination.").   See also  *Briscoe v. Health Care Serv. Corp.,* 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017).  ("Title IX's enforcement mechanism applies to Plaintiffs' sex discrimination claim, so their claim fails because Title IX does not allow disparate-impact claims.").  See also *Weinreb*, 323 F.Supp.3d at 521.  ("Most notably, Section 1557 incorporates Title IX sex discrimination protection (and its accompanying pleading standards).  Section 1557 does not incorporate sex discrimination protection as defined under Title VII.  In effect, what this means is that a plaintiff suing for sex discrimination under the ACA is only able to put forward an intentional discrimination claim, not a disparate impact claim, because Title IX, unlike Title VII, does not provide for disparate impact theories.").

Plaintiffs' Complaint acknowledges ACMC's decision to close its Maternity Ward is "facially neutral."  (ECF #1, ¶ 86).  In the absence of any allegation of intentional discrimination, Plaintiffs cannot show a substantial likelihood of success on the merits of their

disparate impact sex discrimination claim and the Court holds Plaintiffs are not entitled to injunctive relief on that claim. [1]

---

[1]

According to Plaintiffs, the Department of Health and Human Services interprets the ACA as "authorizing a private right of action for disparate impact discrimination on the basis of any of the criteria enumerated in the legislation." 81 Fed. Reg. 31375 at 31440. Plaintiffs cite to 45 CFR 92.101(b)(3)(iii) which reads:

> In determining the site or location of a facility, a covered entity may not make selections that have the effect of excluding individuals from, denying them the benefits of, or subjecting them to discrimination under any programs to which this regulation applies, on the basis of sex; or with the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the program or activity on the basis of sex.

However, in *Doe*, the Sixth Circuit rejected the federal agency's interpretation of the ACA and its ability to expand via agency regulation or interpretation the type of discrimination prohibited by the plain language of the statutes incorporated into the ACA. The Sixth Circuit held,

> "Yes, the Department of Health and Human Services' Office for Civil Rights supports his view. During the notice-and-comment process for promulgating the § 1557 regulations, commenters asked the agency to clarify whether the enforcement mechanisms of each statute, including disparate-impact discrimination as a basis for liability, are available to any plaintiff regardless of the nature of the discrimination at issue. The agency responded that it "interprets Section 1557 as authorizing a private right of action for claims of disparate impact discrimination on the basis of any of the criteria enumerated in the legislation." *Nondiscrimination in Health Programs and Activities,* 81 Fed. Reg. 31,376, 31,439 40 (May 18, 2016).

> But this interpretive guidance does not do everything Doe thinks it does. While agencies may have authority to interpret statutes, they do not have authority to rewrite them. "If the intent of Congress is clear, that is the end of the matter." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In § 1557, as just shown, Congress made plain that it prohibited discrimination in the provision of health care by

11

Furthermore, even if Plaintiffs' Complaint had alleged an intentional sex discrimination claim, (it does not), neither of the individual Plaintiffs' declarations assert that the hospital discriminated against them based on their pregnancies.  Thus, Plaintiffs have failed to submit clear and convincing evidence that would support an intentional sex discrimination claim.

**Breach of Fiduciary Duty**

Count Two of Plaintiffs' Complaint alleges Individual Trustee Breach of Fiduciary Duty in violation of O.R.C. § 1702 *et seq* and common law.  (*See* ECF # 1, PageID: 28-29). According to Plaintiffs, each individual Trustee had a duty to be faithful to the organizational purpose of the ACMC for the benefit of Plaintiffs Hall and Spencer and other expectant mothers in Ashtabula County, who, Plaintiffs allege, are intended beneficiaries of ACMC. These same Trustees also have a duty of loyalty to refrain from transactions that, according to Plaintiffs, "undermine the organizational purpose of the ACMC." (*Id.* ¶ 95).   Lastly, Plaintiffs allege the individual Trustees had a duty of care to exercise sound and independent judgment in performing their duties for the benefit of Plaintiffs Hall and Spencer as well as for expectant mothers in Ashtabula County.

O.R.C. § 1702.01(C) defines non-profit corporation as: "a domestic or foreign corporation that is formed otherwise than for the pecuniary gain or profit of, and whose net earnings or any part of them is not distributable to, its members, directors, officers, or other

---

incorporating and enforcing the substantive standards of liability of the four named statutes, not changing them. There is just one permissible interpretation of this language, and the agency failed to respect it. Its contrary agency interpretation counts for naught.

*Doe*, 926 F.3d at 240.

private persons..."  Ohio Rev. Code Ann. § 1702.12 outlines the authority of corporations, including non-profits and limits the actions that may be brought against them.

> No lack of, or limitation upon, the authority of a corporation shall be asserted in any action except as follows:
>
> (a) By the state in an action by it against the corporation;
> (b) By or on behalf of the corporation against a director, an officer, or a member as such;
> (c) By a member as such or by or on behalf of the members against the corporation, a director, an officer, or a member as such.

This action is not brought by the State of Ohio nor is it brought on behalf of the corporation.  "Member" is defined as, "one having membership rights and privileges in a corporation in accordance with its articles or regulations."  Ohio Rev. Code Ann. § § 1702.01(G).  Plaintiffs do not allege they are members of ACMC under its articles or regulations.  Instead, they allege they are "intended beneficiaries" of ACMC.  Plaintiffs acknowledge that "Ohio Revised Code and Ohio common law is silent on whether intended beneficiaries of a nonprofit may maintain an action against a non-profit corporation for breach of fiduciary duty."  (ECF # 2-2, PageID: 251).  According to Plaintiffs, the O.R.C.'s limitations on actions against a corporation apply only to claims that a corporation has exceeded its authority and does not apply to actions for breach of fiduciary duty.  Plaintiffs assert that  ACMC is not a membership organization and has no members.  Citing to caselaw outside of Ohio, Plaintiffs claim a special interest in the closure of ACMC's Maternity Ward because they are patients as well as employees of ACMC and will suffer severe and irreparable injury should the closure be permitted to proceed.  By voting to close the Maternity Ward, Plaintiffs allege each individual Trustee acted against the organizational purpose of the ACMC

13

and breached their fiduciary duties to Plaintiffs.

Having reviewed the arguments and caselaw, the Court finds Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their Breach of Fiduciary Duty Claim that would warrant the extraordinary remedy of injunctive relief.

O.R.C. § 1702.30(B) imposes fiduciary duties, including good faith, on directors of nonprofit corporations. [2]

> (B) A director shall perform the duties of a director, including the duties as a member of any committee of the directors upon which the director may serve, in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, and with the care that an ordinarily prudent person in a like position would use under similar circumstances. A director serving on a committee of directors is acting as a director.

> (D)(1) For purposes of division (B) of this section: A director shall not be found to have failed to perform the director's duties in accordance with that division, unless it is proved, by clear and convincing evidence, in an action brought against the director that the director has not acted in good faith, in a manner the director reasonably believes to be in or not opposed to the best interests of the corporation, or with the care that an ordinarily prudent person in a like position would use under similar circumstances.

Ohio Rev. Code Ann. § 1702.30 (West)

Here, Plaintiffs have failed to produce clear and convincing evidence that any individual Board member has not acted in good faith.  There is no allegation nor is there evidence of any

---

[2]

  A limited review of Ohio law reveals that 1702.30 applies to a Board of Trustees as the terms "trustee" and "director" appear interchangeable under Ohio law regarding fiduciary duties of the governing board of a nonprofit corporation.  See Ohio Rev. Code Ann. § 1702.01 (K) "Directors" means the persons vested with the authority to conduct the affairs of the corporation irrespective of the name, such as trustees, by which they are designated."

self-dealing by any Board member. Instead, the decision appears, on the limited evidence before the Court, to be entirely a business decision.

Because Plaintiffs have not produced any controlling or persuasive Ohio authority that Plaintiffs have standing to assert a Breach of Fiduciary Duty claim against the individual Board members for the decision to close the Maternity Ward they cannot show they are entitled to injunctive relief.

Furthermore, insofar as Plaintiffs' Breach of Fiduciary Duty claim presents a challenge to the authority of the Trustees to close the Maternity Ward, Ohio law at § 1702.12 does not contemplate an action by beneficiaries of a nonprofit for such a breach.

Therefore, the Court finds Plaintiffs have not demonstrated a duty owed them by Defendants nor have they shown by clear and convincing evidence that they are entitled to the extraordinary remedy of injunctive relief on their Breach of Fiduciary Duty claim.

**Injunction in Aid of Arbitration**

Plaintiffs contend that where a party to a CBA acts in such a manner as to render an arbitration process a nullity, courts have the authority to issue an injunction to aid the arbitration process and preserve the status quo.

Article 6 of the parties' CBA establishes a grievance procedure for any disputes between the parties to the CBA "concerning the interpretation and/or application of, or compliance with, any provision of this Agreement...." Article 6 further reads, "[t]he decision of the arbitrator will be final and binding on all nurses, the ONA and the Medical Center." Article 6 establishes a step-by-step grievance procedure with corresponding time limits.

15

On June 29, 2020, ONA demanded ACMC bargain over the disputed closing. (*Id.*, ¶ 59). On June 30, 2020, ACMC did not agree to suspend the closure. (*Id.*, ¶ 60). On July 7, 2020, ONA requested information from ACMC in order to discuss the terms of restructuring at a contractually required Labor Management Committee as required under Article 5 of the CBA. (*Id.*, ¶ 61). On July 16, 2020 ACMC responded it had no obligation to bargain over the closure decision. (*Id.*, ¶ 62). On July 21, 2020 ONA filed a class action grievance alleging breach of thirty-one sections of the CBA. (*Id.*, ¶ 65). Plaintiffs do not discuss in their briefing the basis for all thirty-one alleged CBA violations but instead focus largely on the purported breach of Section 5.1.5, which reads:

> The Medical Center and the ONA recognize that providing quality patient care is the utmost priority. The parties also agree that nurses should continue to participate in decisions affecting the delivery of patient care and related terms and conditions of employment. Decisions regarding workplace restructuring shall be reached by consensus of the Labor Management Committee. The Labor Management Committee shall have the option of deferring the decision to the Nursing Advisory and Staffing Committee. In any event, the Medical Center shall not be prevented from implementing such restructuring if a consensus cannot be reached.

According to Plaintiffs, the closure of ACMC is a restructuring under the CBA and that no consensus has been reached. ACMC disputes that the closure is a restructuring. Therefore, the parties dispute an interpretation of the CBA. As such, Plaintiffs contend they are entitled to an injunction to maintain the status quo in aid of arbitration so that an arbitrator may interpret the disputed term. Furthermore, no impasse has been reached because ACMC has refused to provide ONA information ONA needs to engage in any meaningful discussion.

Plaintiffs' Motion references three additional CBA provisions they allege were breached by Defendants and must be determined by an arbitrator. Section 1.13 which

prohibits the sale, assignment, transfer or any other change in name or ownership without three months prior notice; Section 1.14 which prohibits replacing registered nurses with non-nursing personnel and Section 1.15 which requires that ACMC as  a "condition of transfer" secure collective bargaining rights for ONA nurses prior to the transaction.  Each of these and the other enumerated breaches must, under the terms of the CBA, be decided by an arbitrator and warrants injunctive relief in aid of such arbitration.  In the absence of an injunction, the Maternity Ward will be closed and the arbitrator will lack the authority to reopen the ward without the express authorization of the Ohio Department of Health.  Moreover, Plaintiffs allege a lack of injunctive relief will endanger pregnant ONA member Plaintiffs who will face the danger of longer travel for delivery.

Plaintiffs rely heavily on the Sixth Circuit case *Aluminum Workers Int'l. Union v. Consolidated Aluminum Corp.*, 696 F.2d 437 (6th Cir 1982), for the proposition that injunctive relief is appropriate in order to aid parties to an arbitration agreement in giving such agreement its full effect.  In *Consolidated*, plaintiff and defendant were signatories to a labor agreement that included a four-step dispute resolution process culminating in arbitration.   The company informed the Union it intended to restructure certain job classifications referred to in the agreement which resulted in the elimination of sixteen employees.  The parties disagreed whether the agreement allowed the company to unilaterally reclassify the employees.

The union filed a complaint and, after a hearing, the court ordered the company to reinstate the laid-off employees and return to the status quo pending arbitration. The company appealed.

On appeal, the Sixth Circuit noted that federal law severely limits the jurisdiction of

17

federal court to intervene in labor disputes.  The Sixth Circuit cited to the Norris-LaGuardia

Act, 29 U.S.C.A. § 104, which reads in pertinent part:

> No court of the United States shall have jurisdiction to issue any restraining
> order or temporary or permanent injunction in any case involving or growing
> out of any labor dispute to prohibit any person or persons participating or
> interested in such dispute (as these terms are herein defined) from doing,
> whether singly or in concert, any of the following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of
> employment

However, the Supreme Court recognized a narrow exception to the anti-injunction

policy in the Act.  That narrow exception was found in *The Boys Markets v. Retail Clerks*

*Union,* 398 U.S. 235 (1970), wherein the Supreme Court held, "that when the underlying

dispute is one over which the parties have agreed to arbitrate and traditional equitable bases for

relief have been met, a court may enjoin a strike in violation of a no-strike clause."

*Consolidated,* 696 F.2d at 442.   The Sixth Circuit went on the say, "Although *Boys Markets*

involved employee violation of a no-strike clause, unilateral action by employers may have an

equally pernicious effect on the arbitral process.  Therefore, the courts have extended the *Boys*

*Markets* exception to embrace employer behavior which has the effect of evading a duty to

arbitrate or which would otherwise undermine the integrity of the arbitral process." *Id.*

In order to obtain an injunction, the movant must satisfy the following criteria: 1) the

underlying grievance must be one the parties are contractually obligated to arbitrate; 2)

injunctive relief is warranted under ordinary principles of equity, meaning: a) the breach is

occurring or will continue to occur and, b) the movant will suffer irreparable harm as a result.

Furthermore, the Union will suffer more from the denial of injunctive relief than the company

will from its issuance. *Id* at 442.

In finding the union was not entitled to injunctive relief, the Sixth Circuit found the union could not show irreparable harm, which the Sixth Circuit defined as "injury so great that an arbitrator's award, if forthcoming, would be inadequate to fully recompense the injured party." *Id.* at 443. "[T]he irreparability of the injury suffered by the union has in many cases become virtually the sole inquiry in those cases where injunctive relief is sought against an employer." *Id.*

The Sixth Circuit concluded that loss of employment of union members did not constitute irreparable harm even if the dispute was subject to arbitration. "Absent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, we hold that loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for injunctive relief." *Id.*

The crucial consideration in *Consolidated* was the ability of the arbitrator to award relief to the discharged employees in the form of back pay and reinstatement. In discounting several Fourth Circuit cases affirming injunctive relief, the Sixth Circuit found that, unlike the companies in those cases, the company in *Consolidated* could return the laid-off union employees to their former status by reinstatement and backpay should the arbitrator so order.

The Sixth Circuit also rejected several of the union's alleged harms that laid off employees might experience such as repossessions, foreclosures and credit injury, finding they did not "threaten the arbitral process."

Upon consideration of the *Consolidated* factors, the Court finds Plaintiffs have failed to

show by clear and convincing evidence irreparable harm. The first factor does not appear to be in dispute as the parties agree the disputes raised are grievable and have represented to the Court they are proceeding through the stages of the grievance process set forth in the CBA.

The Court must next consider whether Plaintiffs will suffer irreparable harm if no injunction is entered. Plaintiffs describe the irreparable harm they will suffer as follows:

> Ms. Spencer is an ONA member who is currently pregnant and due to deliver soon. The closure would post immediate risks to her health and her baby's health, as set forth in her declaration. ONA does not know if there are other registered nurses in the bargaining unit similarly situated. But if there are, they face the same increased risks to their health and the health of their babies. ONA nurses also face increased liability and professional licensure actions. As a practical matter, if the closure is not enjoined pending arbitration of the grievance, an arbitrator will not be able to restore the Maternity Unit after it is closed.

(Motion pg. 53).

The harm to the health of a Union member does not "represent the type of harm that, by its occurrence, threatens the arbitral process." *Consolidated,* 696 F.2d at 444. Plaintiffs' harm stems from the type of care or lack thereof that would result from the closure. Policies and procedures affecting patient care are exclusively vested with the ACMC. (CBA 3.1). The parties' CBA controls the conditions and benefits of employment and provides for a grievance process. It does not establish standards of patient care.

Nor does the alleged irreparable harm complained of by Plaintiffs stem from any purported breaches by Defendants. Section 5.1.5 applies to restructuring and requires that nurses be part of the decision-making process where any purported restructuring affects the delivery of patient care. However, 5.1.5 expressly states, "In any event, the Medical Center shall not be prevented from implementing such restructuring if a consensus cannot be reached."

Because any restructuring cannot be prevented by the Union, Plaintiffs cannot show irreparable harm stemming from the closure regardless of whether the issue was arbitrated.

The additional Sections of the CBA that Plaintiffs argue have been breached and upon which they have submitted some argument, likewise do not result in irreparable harm. Section 1.13 prohibits the sale, assignment, transfer or change in name of ownership without three months prior notice; Section 1.14 prohibits replacing registered nurses with non-nursing personnel and Section 1.15 requires that ACMC as a "condition of transfer" secure collective bargaining rights for ONA nurses prior to the transaction. These all affect the conditions of employment, not patient care, and do not support Plaintiffs' argument that Nurse Spencer's health is threatened by the closure of the Maternity Ward.

Furthermore, there appears to be no genuine issue of dispute that ACMC's nursery is a Level 1 nursery and is not equipped to handle "high risk" pregnancies such as Plaintiffs'. Jacquelyn Difiore, the Chief Nursing Officer for ACMC, attests ACMC's Maternity Ward is a Level 1 nursery "and lacks capabilities to service high-risk births." (ECF 11). She further attests that high risk births are "regularly transferred to higher level units" such as Hillcrest, which has a Level 3 nursery. Thus, Plaintiffs cannot show irreparable harm sufficient to warrant injunctive relief because they cannot show by clear and convincing evidence Hall or her baby's health is threatened by ACMC's Maternity Ward closure, since Hall would most likely have her high risk pregnancy treated at a higher level facility. Furthermore, Spencer describes her own pregnancy as "higher risk." (ECF 1-19).

Moreover, Spencer, in her declaration states,

I originally planned to deliver with Dr. Lazarescu at Ashtabula County

21

>Medical Center, however, after I was informed that Ashtabula County
>Medical Center is shutting down its OB-GYN facilities, I decided to make a
>change and plan to deliver with Dr. McElroy at Hillcrest Hospital
>("Hillcrest"),which is located in Mayfield, Ohio and is about 45 minutes
>away.

(*Id.*).

Thus, Spencer has already transferred her care to another physician at Hillcrest, militating

against any finding of irreparable harm due to the closure of ACMC's Maternity Ward. This is

particularly so when coupled with the fact that Hillcrest offers higher level care to high risk

pregnancy patients.

Finally, the parties dispute whether an arbitrator can order the reopening of the ACMC

Maternity Ward if it is allowed to close as scheduled. ACMC President and Board of Trustees

member Michael Habowski attests that should an arbitrator decide the Maternity Ward should

be reopened, ACMC would have the ability to do so. (ECF 11-1). Plaintiffs cursorily contend

it could not, but this disputed fact does not present clear and convincing evidence that an

arbitrator could not reopen the Maternity Ward.

Lastly, both Plaintiffs and Defendants acknowledge many of the OB-GYN staff in the

Maternity Ward will remain on staff at ACMC. Defendants attest an obstetrician will be on call

should a woman present in the emergency room for delivery, thus alleviating any concern that

nurses or physicians lacking OB-GYN training or experience will be at higher liability risk as

ACMC has provided evidence that such skilled employees remain on staff to care for those

deliveries arriving at the Emergency Room. (See ECF 9 and ECF 11).

In light of the above facts, the Court finds that at this stage of the proceedings Plaintiffs

have failed to meet their burden to show by clear and convincing evidence that they will suffer

irreparable harm when ACMC closes its Maternity Ward on August 1, 2020, therefore, the

Court denies Plaintiffs' Motion for Temporary Restraining Order.

IT IS SO ORDERED.


 /s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge

23